UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-14057-CR-GRAHAM/LYNCH

UNITED STATES OF AMERICA,

      Plaintiff,

v.

BENNIE WILEY,

      Defendant.

_____/

FILED by _____ D.C.

SEP - 6 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

REPORT AND RECOMMENDATION ON FINAL EVIDENTIARY HEARING
IN RESPECT TO SUPERSEDING PETITION ALLEGING
VIOLATIONS OF SUPERVISED RELEASE [D.E. 140]

THIS CAUSE having come on to be heard on September 1, 2016, for a final evidentiary hearing in respect to the aforementioned Superseding Petition and this Court having received evidence, testimony, and arguments of counsel, makes the following recommendation to the District Court:

1.     The Superseding Petition charges the Defendant with the following fifteen violations:

<table>
<tr><td>Violation Number 1</td><td>Violation of Mandatory Condition, by unlawfully possessing or using a controlled substance. On May 23, 2016, the defendant submitted a urine specimen which tested positive for the presence of cocaine in our local laboratory, and subsequently was confirmed positive by Alere Toxicology Services, Incorporated.</td></tr>
<tr><td>Violation Number 2</td><td>Violation of Mandatory Condition, by refusing to submit to drug testing. On June 1, 2016, the defendant failed to submit to drug testing as scheduled by Color Code at Social Solutions, Inc.</td></tr>
<tr><td>Violation Number 3</td><td>Violation of Mandatory Condition, by refusing to submit to drug testing. On June 2, 2016, the defendant failed to submit to drug testing as</td></tr>
</table>

scheduled by Color Code at Social Solutions, Inc.

**Violation Number 4**          **Violation of Mandatory Condition**, by refusing to submit to drug testing.  On June 6, 2016, the defendant was instructed to submit to drug testing and failed to do so.

**Violation Number 5**          **Violation of Mandatory Condition**, by refusing to submit to drug testing.  On June 7, 2016, the defendant was instructed to submit to drug testing and failed to do so.

**Violation Number 6**          **Violation of Standard Condition**, by failing to report to the probation officer as directed. On June 6, 2016, during a phone conversation, the defendant was instructed to report to the U.S. Probation Office on June 6, 2016, and he failed to comply.

**Violation Number 7**          **Violation of Standard Condition**, by failing to report to the probation officer as directed.  On June 6, 2016, during a phone conversation, the defendant was instructed to report to the U.S. Probation Office on June 7, 2016, and he failed to comply.

**Violation Number 8**          **Violation of Standard Condition**, by failing to report to the probation officer as directed.  On June 7, 2016, during a phone conversation, the defendant was instructed to report to the U.S. Probation Office on June 8, 2016, and he failed to comply.

**Violation Number 9**          **Violation of Standard Condition**, by failing to submit a truthful and complete written monthly report within the first five days of each month. The defendant has failed to submit a written monthly report for the months of April and May 2016.

**Violation Number 10**         **Violation of Standard Condition**, by failing to follow the instructions of the probation officer. On June 6, 2016, the defendant failed to submit to drug testing as directed.

2

**Violation Number 11**   **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about August 3, 2016 in Highlands County, Florida, the defendant committed the offense of battery-domestic battery by strangulation, contrary to Florida Statute 784.041(2)(a).

**Violation Number 12**   **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about August 3, 2016 in Highlands County, Florida, the defendant committed the offense of aggravated battery with a deadly weapon, contrary to Florida Statute 784.05(1)(a)2.

**Violation Number 13**   **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about August 3, 2016 in Highlands County, Florida, the defendant committed the offense kidnapping / false imprisonment, contrary to Florida Statute 787.02(1)(a).

**Violation Number 14**   **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about August 3, 2016 in Highlands County, Florida, the defendant committed the offense of armed trespassing/structure or conveyance, contrary to Florida Statute 810.08(2)(c).

**Violation Number 15**   **Violation of Mandatory Condition**, by failing to refrain from violation of the law.  On or about August 3, 2016 in Highlands County, Florida, the defendant committed the offense of obstructing justice/ intimidate threaten victim /informant, contrary to Florida Statute 914.22(1).

2.     This Court also stated at the outset that all evidence and testimony considered by this Court at the preliminary hearing previously conducted in this matter would be made a part of the record for the final hearing.  The Defendant was present and represented by counsel at the preliminary hearing.  Counsel for the Defendant had the

3

opportunity to cross-examination the government witnesses and present any witnesses on behalf of the Defendant.  Therefore that record is incorporated and made a part of this record.

3.      The first witness called by the government was Maxine Tate.  She is the mother of Ashley Tate, the person who the Defendant allegedly assaulted on or about August 3, 2016.  The allegations involving the Defendant's acts on Ashley Tate are contained within Violation Numbers 11 through 15 inclusive.

4.      Maxine Tate testified that on August 3, 2016 she went to her daughter's home in Avon Park, Florida, when she was not able to reach her daughter by phone.  Her inability to contact her daughter made her believe that there may be something wrong.  Her daughter, Ashley, lives alone with a 4 year old child and a 4 month old child.  Maxine Tate identified the Defendant in open court as the father of her daughter's 4 month old child and as the person she knows to be Bennie Wiley.

5.      Maxine Tate stated that she last saw her daughter the previous night and that her daughter did not have any visible injuries to her face, arms, or any other part of her body when she last saw her.   When she went to her daughter's home, her daughter eventually answered the door. Ms. Tate saw her daughter Ashley with a bleeding nose and a swollen face. Her daughter did not open the door all the way.  She also noticed a cut on her daughter's arm and knuckle area of her hand.

6.      Maxine Tate then left her daughter's residence to go find the Defendant who lived approximately a mile away and who she suspected was the person who caused these injuries to her daughter. On her way, she called 9-1-1 to report the matter to the police. The Defendant's car was not at his residence so Ms. Tate returned to her daughter's

4

residence. The police were already there. When the police knocked on the door, Ms. Tate observed the Defendant come out with her grandchild.

7.      Government's Exhibit No. 2 admitted into evidence at this hearing is a composite exhibit of the photographs of Ashley Tate taken by the responding officer on the date in question.   Ms. Tate identified those photographs of her daughter and which depicted the injuries she testified to.

8.      She heard her daughter say that she was afraid and that she was crying and shaking at the time that her daughter was speaking with the police at the scene.  She overheard her daughter tell the police that she was afraid of this Defendant. Ms. Tate also testified that she saw a knife lying on the floor by the sofa and had never seen that knife at her daughter's residence before. Government's Exhibit No. 6 admitted into evidence at this hearing is a photograph of that knife taken by the police where it was located at Ashley Tate's residence.

9.      Ms. Tate testified that there was no one else at the home other than her daughter, the Defendant, and the minor children. Ms. Tate testified that she did not know that her daughter had previously filed for a protection order with the state court to protect her from this Defendant.

---

10.     The next witness called was Deputy Sheriff Ellington of the Highlands County Sheriff's Office.  He was on duty in the Avon Park area on August 3, 2016 and responded at approximately 8:45 a.m. to Ashley Tate's residence in respect to the matter testified to by Maxine Tate previously.   Government's Exhibit No. 1 admitted into evidence at this

hearing is a copy of the redacted report that Deputy Ellington prepared in respect to his actions in this matter.

11.     Upon arriving at the scene, he knocked on the door and Ashley Tate answered.  She appeared to him to be highly emotional with visible injuries on her arm, hand, and swollen face.  He saw scratch marks on her neck and face as well.  Ashley Tate was crying and was not making eye contact with him.  He had Ashley Tate come outside and continued to ask her questions as to what happened.  Maxine Tate was there in the background but was not telling Ashley Tate what to say to the police.

12.     Government's Exhibit No. 5 admitted into evidence at this hearing is a disk with photographs and Ashley Tate's statement.  It was admitted after this Court questioned counsel for the Defendant.  Counsel stated that he could not say with certainty that this exhibit had previously been provided to him.  Counsel for the government stated that the exhibit had been provided by the U. S. Attorney's Office previous to this hearing.  Based upon counsel for the Defendant saying that he could not state unequivocally that the government had failed to produce this prior to the hearing, this Court admitted the exhibit into evidence.  However, this Court points out to the District Court that it did not listen to nor view any portions of Government's Exhibit No. 5 in reaching its conclusions and findings in this matter.  This Court specifically finds that there is more than ample evidence to support the allegations set forth in the Superseding Petition without even having to refer to Government's Exhibit No. 5 should the Defendant continue to make objections concerning that exhibit.

13.     Deputy Ellington identified Government's Exhibit No. 2 as the photographs that he took of Ashley Tate depicting her injuries in this matter.  Ashley Tate told Deputy

6

Ellington that the Defendant repeatedly choked her.   Deputy Ellington saw marks on Ashley Tate's neck consistent with what she had told him about being choked.  She also advised Deputy Ellington that the Defendant had used a knife to cause her harm.  She described it and where it was located in her house.  Deputy Ellington photographed it in place as depicted in the exhibit referenced previously by this Court.  The photograph was taken before the knife was moved from its located.  That knife, depicted in Government's Exhibit No. 6, has a 3 inch blade according to Deputy Ellington.  He did not notice any blood at the scene.  Deputy Ellington testified that Ashley Tate said she was terrified of the Defendant because of violence in the past.  Based upon statements given to him by Ashley Tate, Deputy Ellington took the knife into evidence and arrested the Defendant on the scene.  The Defendant made no statements at the scene.

_____

14.     The next witness called by the government was Amanda Maghan, the U.S. Probation Officer supervising the Defendant.  Government's Exhibit No. 4 admitted into evidence at this hearing is a report of urinalysis of the Defendant and the chain of custody form.   Those urinalysis results are in respect to Violation Number 1 set forth in the Superseding Petition.   The exhibit reflects that urine specimen tested positive for the presence of cocaine.

15.     This Court would also note for the District Court that the government did not offer an exhibit identified by number 3.   The only exhibits admitted into evidence at this hearing were Government's Exhibits Nos. 1, 2, 4, 5 and 6.  This Court mentions this for the

7

District Court so it does not appear as though there is an exhibit which this Court failed to reference or which was not placed in evidence.

16.     U. S. Probation Officer Maghan testified that the Defendant failed to submit to drug testing as directed on June 1, June 2, June 6, and June 7, all of 2016.  He was instructed to do so and did not.  These failures to submit to drug testing are in respect to Violations Numbers 2, 3, 4 and 5 of the Superseding Petition.

17.     The Defendant was instructed to report to the United States Probation Office on June 6, 2016 and he failed to do so (Violation Number 6).  After saying that he could not make it that day, the Defendant was instructed to report the following day on June 7th and subsequently on June 8th as well.  The Defendant failed to appear on either of those dates as specifically directed by his U. S. Probation Officer. (These are in regards to Violations Numbers 7 and 8 of the Superseding Petition).

18.     The Defendant also failed to file monthly reports for April and May of 2016 as directed.  (This relates to Violation Number 9).  Counsel for the Defendant made an argument during cross-examination and at final argument at the conclusion of the hearing, that since the Defendant only began supervision in this District in early April of 2016, that somehow relieved him of the responsibility to file a monthly report.  There is no evidence to support that argument.  The only evidence is that the Defendant was required to file a monthly report for April and May of 2016 and that he did not do so.

19.     U. S. Probation Officer Maghan identified the Defendant in open court as the person she has been supervising and who she knows to be Bennie Wiley.

20.     Counsel for the Defendant attempted to show, during cross-examination, that the Defendant could not make it to Fort Pierce on a regular basis since he resides in Avon

Park.  However, Avon Park is in Highlands County and within the Fort Pierce Division of this Court.  Counsel for the Defendant attempted to make points on cross-examination that the Defendant on June 6, June 7 and June 8 told his U. S. Probation Officer Maghan as well as U. S. Probation Officer Osking that he could not make it there because of transportation problems or other issues.  It appears as though the Defendant had his girlfriend call at one time and say that she was his transportation and could not get there by 5:00 p.m..  However, the evidence reflects that the United States Probation Office was very accommodating in attempting to get the Defendant to come in on June 6, 2016 when he did not.  Thereafter they said that he could come in on June 7th, which he did not because he had another problem getting here.  Finally, they told him to report on June 8th and he did not.  According to U. S. Probation Officer Maghan's testimony, it always appeared to be a transportation problem, a lateness of the day, or bad weather, which prevented the Defendant from complying with the directions of the U. S. Probation Office to report to Fort Pierce.

_____

21.    Ashley Tate was next called by the government to testify.  She is 29 years old.  She identified the Defendant in open court as the person who did cause her injury on August 3, 2016.  The Defendant is the father of her youngest son.  She does take Zoloft for anxiety and depression.

22.    She acknowledged that the Defendant has called her since he was arrested in this case.  Those calls were from the jail.  She stated that they discussed their son and this case.  However, it did not appear to this Court that there were any conversations

between the Defendant and Ashley Tate which were intimidating in any way, shape or form.  She did not testify to any such conversations.

23.     Ashley Tate testified that the Defendant came over to her home unannounced and came into the home.  They fought.  The Defendant had brought a knife to the house.  The marks on her neck were where the Defendant had choked her.  She does not recall how she received the marks on her face.  She was upset at the time and they were both fighting together.

24.     The next day her mother came to her house.  She was bleeding from a cut on her hand and forearm.  She did have scratches on her nose, but she did not believe that she was bleeding from her nose or from her ear.

25.     When the deputy arrived at the scene, she told the deputy that she did not know how the Defendant had gotten into her house and he was not welcome there.  She told the deputy that the Defendant choked her with both hands which she does not recall exactly what she said to the deputy word for word.

26.     She testified that the Defendant pulled her downstairs by her hair since the children were asleep upstairs.   They continued the argument for quite some time downstairs.  The Defendant had the knife open.  He had brought it to the house.  She said the Defendant was trying to use the knife to scare her to prevent her from leaving the living room area.

27.     Ashley Tate showed the Court the mark/scar which still remains on her right arm from where she was cut with the knife.  She stated that she was cut while defending herself.  The Defendant had the knife during the argument and her injuries were the result of her trying to defend herself from the Defendant during that time that he had the knife in

10

his hand and fighting with her.  She did tell the deputy that she was afraid of the Defendant.  She also confirmed that the deputy took the photographs of her as depicted in the evidence and that those photos were taken at her home on August 3, 2016.

28.     On cross-examination, Ashley Tate testified that she has known the Defendant for about a year and a half and has been involved with him.  They have a child together.  They were together the previous day on August 2, 2016.  When he came back to the house on August 3rd, unannounced and uninvited, this is when the argument began. The Defendant began accusing Ms. Tate of cheating on him.  This argument started around 2:00 a.m. according to her.  The Defendant did not have a key to her home and she does not know how he got into her home and upstairs where she was asleep.

29.     She testified she told the Defendant to leave and pushed him away.  The Defendant was upset.  The Defendant is bigger than her and she was trying to protect herself from him.  She is not sure how long the entire fight took place.  The hitting went back and forth between she and the Defendant.  The Defendant pulled out a knife and waved it at her.  He overpowered her according to her testimony.  She tried to take it away from him and was cut on her arm when she was trying to defend herself and get the knife away from the Defendant.

30.     After the fight concluded, the Defendant remained at her residence.  Her mother then arrived and shortly thereafter the deputy arrived as well.  The Defendant was eventually arrested at her residence and taken away.

31.     Ms. Tate confirmed that she told the officers that the Defendant had strangled her and choked her.  She testified the Defendant would not let her leave the house and she did not believe that she could leave the house while he was still there.  On cross-

11

examination she testified that after the fight they were both sleeping and she "guesses" she could have possibly left during that time.

32.     The Defendant has not threatened or intimidated her since he was arrested in this case.  The calls between she and the Defendant did not contain any such threats. She has filed a waiver of prosecution in Highlands County on the state charges because she thinks everything got blown out of proportion.  She just wants it to all be over.

33.     Thereafter the government rested.

34.     The Defendant presented no witnesses or evidence at the final hearing. Counsel for the Defendant did make an argument which the District Court can review on the record and in the transcript.  Counsel argues that in respect to Violations Numbers 2 and 3, the U. S. Probation Officer has no personal knowledge of those violations.   In respect to Violations Numbers 5, 6, 7 and 8, there were conversations between the Defendant, his girlfriend and the U. S. Probation Office explaining why he could not make it all the way from Highlands County to Fort Pierce and therefore he should be excused from those violations.  Counsel argued that Violation Number 9 regarding the monthly report should be dismissed as to the April report since he only began supervision in this District in early April of 2016.

35.     In respect to Violations Numbers 11 through 15 inclusive, counsel for the Defendant argued that in respect to the assault, battery, kidnapping and trespass charges, that the Defendant may have been acting in self-defense to protect himself from the victim, Ashley Tate.  Further, she was injured while trying to take the weapon away and it was not the Defendant looking to "cut" Ashley Tate.  Additionally, the Defendant was welcome on

12

the premises and therefore there was no trespass.  In conclusion, counsel argued that there is no evidence of any obstruction of justice or intimidation.

## ANALYSIS

36.     This Court has considered all of the evidence submitted, being the sworn testimony and exhibits, as well as arguments of counsel.  The standard of proof in violations of supervised release is by a preponderance of the evidence standard and not by a beyond a reasonable doubt standard.  Revocation of supervised release is treated as part of the penalty phase for the initial offense involved.  The violative conduct need not be criminal and the defendant need only be found by a judge under a preponderance of the evidence standard.  United States v. Cunningham, 607 F.3d 1264 (11th Cir. 2010).

37.     This Court finds that the Defendant has violated his supervised release in respect to Violations Numbers 1 through 14 inclusive.  This Court is not going to restate all of the items of evidence which support this finding.  The evidence is clear, convincing and in the record.

38.     The Defendant tested positive for the presence of cocaine and Violation Number 1 is therefore proven and established.

39.     The Defendant failed to report for drug testing as directed.  The testimony is clear in that regard.  Therefore Violations Numbers 2, 3, 4 and 5 have been proven and established.

40.     The Defendant was directed to report to the U. S. Probation Office on June 6, 7 and 8.  He did not do so.  His excuses of being in Highlands County and that they should come visit him are without any merit.  Violations Numbers 6, 7 and 8 have been proven and established.

13

41.     This Court does not understand the argument by counsel for the Defendant in respect to the April monthly report.  The Defendant is required to make monthly reports. He began supervision in early April of 2016.  Specifically on April 8, 2016.  He is required to file monthly reports.  He did not do so for the months of April and May of 2016. Therefore Violation Number 9 has been proven and established.

42.     Violation Number 10 has also been established by the Defendant failing to submit to drug testing as directed. USPO Maghan's testimony supports that conclusion.

43.     In respect to Violation Number 11, the testimony of Ashley Tate was that the Defendant choked and strangled her.  Violation Number 11 has been proven and established.

44.     In respect to Violation Number 12, which is aggravated battery with a deadly weapon, the Defendant, a much larger individual than Ashley Tate, grabbed her by her hair after choking her.  He pulled her downstairs.  He committed a battery upon her with a knife. In defending herself, Ms. Tate cut her arm on the knife which the Defendant was wielding and utilizing to terrorize and scare Ms. Tate according to the only testimony this Court has received.  Therefore, Violation Number 12 has been proven and established.

45.     In respect to Violation Number 13, being kidnapping/false imprisonment, Ashley Tate testified that she was in fear of her life and that she could not leave her own residence while the Defendant was there.  Whether or not she could have gotten out of her residence while the Defendant was sleeping does not negate the fact that she felt that she was being held in her own residence by the Defendant who was armed with a knife. Therefore, Violation Number 13 has been proven and established.

46.     Violation Number 14 relates to armed trespass/structure or conveyance. The testimony is that the Defendant brought a knife to Ashley Tate's residence. She testified he was not welcome there and she did not know how he entered the residence. He did not have a key nor permission to enter the residence. However, he did so armed with a knife. Therefore, Violation Number 14 has been proven and established.

47.     Finally, in respect to Violation Number 15, there is no evidence that the Defendant did anything which obstructed justice or intimidated Ashley Tate or any other witness. Therefore, this Court finds that this violation has not been established by the evidence of any actions by the Defendant on August 3, 2016. Any intimidation or threats that may have been considered by Ashley Tate on the date in question are already contained within the Defendant's aggravated battery upon her and the kidnapping/false imprisonment. Therefore, this Court finds Violation Number 15 has not been clearly established in the record and should be dismissed.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to Violations Numbers 1 through 14 inclusive as set forth in the Superseding Petition, and that he be found to have not violated his supervised release in respect to Violation Number 15 of that same Superseding Petition.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, the United States District Judge assigned to this case. Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right

15

to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** this _6rz_ day of September, 2016, at Fort Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies furnished:
Hon. Donald L. Graham
AUSA Carmen M. Lineberger
AFPD Fletcher Peacock
U. S. Probation
U. S. Marshal