UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Case No. 00-14057-CR-GRAHAM/LYNCH

UNITED STATES OF AMERICA,

    Government

vs.

BENNIE WILEY

    Defendant.
_____/

### ORDER

**THIS CAUSE** comes before the Court upon United States Chief Magistrate Judge Frank J. Lynch, Jr.'s Report and Recommendation on Final Evidentiary Hearing in Respect to Superseding Petition Alleging Violations of Supervised Release [D.E. 150], Defendant Wiley's Objections to the Magistrate Judge's Report and Recommendation ("Objections") [D.E. 155], and the Government's Motion to Deny Defendant's Objections to Magistrate Judge's Report and Recommendation ("Response") [D.E. 156].

**THE COURT** has reviewed the record and is otherwise fully advised in the premises. For the following reasons, this Court adopts the Report and Recommendation in part as set forth herein.

**THIS MATTER** was referred to United States Chief Magistrate Judge Frank J. Lynch, Jr., pursuant to 28 U.S.C. § 636 and the

Local Magistrate Rules of the Southern District of Florida. On September 6, 2016, Chief Magistrate Judge Lynch issued a Report and Recommendation, which found that Wiley violated his supervised release as to Violations 1 through 14 and not as to Violation 15.

## LEGAL STANDARD

Title 18 U.S.C. § 3583(e)(3) "permits a district court to revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release upon a finding by a preponderance of the evidence that the defendant violated a condition of supervised release." <u>United States v. Cunningham</u>, 607 F.3d 1264, 1266 (11th Cir. 2010) (internal quotations omitted). Revocation of supervised release is treated as part of the penalty phase for the initial offense involved. <u>Id.</u> at 1267. The illicit conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard. <u>Id.</u>

## DEFENDANT'S OBJECTIONS

After moving for and receiving a time extension, Wiley timely filed his Objections. Therein, he argues that he did not commit Violations 4, 5, 6, 7, 10, 11, 12, 13, and 14. The Government then filed its Response. In its Response, the Government argues that this Court should adopt the Report and Recommendation's findings of fact and conclusions of law.

2

**THE COURT'S RULING**

After carefully reviewing the record, this Court affirms the Report and Recommendation as to Violations 1 through 10, 13, 14, and 15 and does not as to Violations 11 and 12. This Court will not further discuss Violations 1, 2, 3, 8, 9, and 15 herein because Wiley does not object to the Report and Recommendation as to these violations.[1] Wiley argues Violations 4 and 6 and 5 and 7, together, and he argues Violations 10, 11, 12, 13, and 14 individually in his Objections. Hence, this Court will address each Violation in the order presented.

**Violations 4 and 6, 5 and 7, and 10**

Wiley argues that he did not intentionally commit Violations 4 and 6 and 5 and 7, which are technical violations of mandatory and standard conditions of his supervised release. In response, the Government asserts that there is enough evidence in the record to support the Report and Recommendation's findings and conclusions as to these violations. This Court concurs with the Government's position.

---

[1] Violations 1, 2, and 3 are technical violations of mandatory conditions. Violation 1 alleges that Wiley unlawfully possessed or used a controlled substance, and Violations 2 and 3 allege that he refused to submit to drug testing. Violations 8 and 9 are technical violations of standard conditions, which allege that Wiley failed to report to the probation officer as directed and failed to submit a truthful and complete written monthly report within the first five days of each month, respectively. Lastly, Violation 15 is a substantive violation of a mandatory condition, which alleges that Wiley failed to refrain from violation of the law.

3

As such, this Court concludes that, by a preponderance of the evidence, Wiley committed Violations 4 and 6 and 5 and 7. Thus, this Court affirms the Report and Recommendation as to Violations 4 and 6 and 5 and 7.

Wiley also claims that he did not commit Violation 10, which is a technical violation of a standard condition of his supervised release because it is duplicative of Violation 4. Specifically, he argues that he did not intentionally commit Violation 10. The Court is unpersuaded by this argument as well. As such, this Court concludes that, by a preponderance of the evidence, Wiley committed Violation 10. Thus, this Court affirms the Report and Recommendation as to Violation 10.

**Violation 11**

Wiley claims that he did not commit Domestic Battery by Strangulation as alleged in Violation 11 because Victim Ashley Tate was the aggressor, and his actions were in self-defense. The Government did not address Violation 11 in its Response. In short, this Court concurs with Wiley's position.

Pursuant to § 784.041(2)(a),

> A person commits domestic battery by strangulation if the person knowingly and intentionally, against the will of another, impedes the normal breathing or circulation of the blood of a family or household member or of a person with whom he or she is in a dating relationship, so as to create a risk of or cause great bodily harm by applying pressure on the throat or neck of the other

4

>           person or by blocking the nose or mouth of
>           the other person.

FLA. STAT. § 784.041(2)(a) (2007). Under § 776.012(1), "a person is justified in using or threatening to use force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or another against the other's imminent use of unlawful force." FLA. STAT. § 776.012(1) (2014). If there is any evidence of self-defense presented by a defendant, either upon cross-examination of State witnesses or upon direct examination of the defendant or his witnesses, the element of self-defense becomes an issue. See Sipple v. State, 972 So. 2d 912, 915-16 (Fla. 5th DCA 2007), reh'g denied, Jan. 30, 2008. Moreover, a defendant does not have to testify to establish a prima facie case of self-defense. Id.

While a defendant may have the burden of going forward with evidence of self-defense, the burden of proof never shifts from the Government, and this standard broadly includes the requirement that the Government prove that a defendant did not act in self-defense. See Jenkins v. State, 942 So. 2d 910, 914 (Fla. 2d DCA 2006). If a defendant establishes a prima facie case of self-defense, the Government must overcome the claim of self-defense by rebuttal or inference. See id. If the

5

Government fails to sustain this burden of proof, the court is duty bound to find in favor of a defendant. See id.

Here, the Government has not overcome Wiley's claim of self-defense established during examination of the Victim. On direct examination, Deputy Ellington testified that he took pictures of the Victim's neck because she alleged that Wiley repeatedly choked her over a period of time. [D.E. 154 at 39]. Subsequently, the Victim testified on direct examination that Wiley "started choking [her] but [they] were fighting together." Id. at 72. On cross-examination, however, her testimony clarifies that night's sequence of events. First, she "pushed [Wiley] and they just started arguing," and there was hitting going back and forth on both sides. Id. at 84-85. Then, she got violent, started hitting Wiley, pushed him, and only after that did Wiley choke her. See id. at 84-85.

The Victim's cross-examination testimony makes clear that she was the aggressor and unlawfully pushed Wiley first. Only then did he respond by fighting back and, at some point, choke her. This testimony establishes a prima facie case of self-defense for Wiley. Now, the Government must overcome Wiley's self-defense argument by rebuttal or inference by a preponderance of the evidence, which it fails to do. As such, this Court concludes that, by a preponderance of the evidence, Wiley acted in self-defense and did not commit Domestic Battery

6

by Strangulation. See United States v. Younglove, No. 08-800050-CR-HURLEY, 2015 WL 4470327, at *7 (S.D. Fla. June 29, 2015) (determining that Defendant did not violate his supervised release because he was acting in self-defense).

**Violation 12**

Wiley contends that he did not commit Aggravated Battery with a Deadly Weapon as alleged in Violation 12 because the Superseding Petition charged Culpable Negligence.  In its Response, the Government argues that Violation 12 alleges that Wiley committed Aggravated Battery with a Deadly Weapon on August 3, 2016, even though there is a conflict between what is alleged, Aggravated Battery with a Deadly Weapon, and what is charged by way of statute, Culpable Negligence.  Additionally, the Government states that Wiley was aware that there was probable cause that he committed Aggravated Battery with a Deadly Weapon regardless of its scrivener's error.  The Court finds the Government's position persuasive as to this issue.

Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction. Fed. R. Crim. P. 7(c)(2); United States v. Rowan, 663 F.2d 1034, 1035 (11th Cir. 1981) (concluding that an error in the citation of a statute does not invalidate an indictment unless the error misleads the defendant to his prejudice).

7

In its Superseding Petition, the Government alleged that Wiley committed Aggravated Battery with a Deadly Weapon, contrary to § 784.05(1). Section 784.05(1), however, is the statute for Culpable Negligence. Nonetheless, the Court does not dismiss indictments for an erroneous citation unless it prejudices a defendant. Indeed, Wiley does not argue that he was prejudiced by this error. Rather, he merely states that a review of § 784.05(1) reveals that it applies to Culpable Negligence, not Aggravated Battery with a Deadly Weapon. Although Rule 7(c)(2) and <u>Rowan</u> reference errors in a citation of an indictment or information, this Court concludes that the same rule applies in a Superseding Petition in the context of supervised release. Thus, the Government's citation error in the Superseding Petition does not prohibit the Court from finding that Wiley violated condition 12.

Alternatively, Wiley contends that the knife in question was a common pocketknife and therefore not a dangerous weapon, and there is no evidence in the record that he had the necessary intent to cause great bodily harm, permanent disability, or permanent disfigurement to Victim. The Government argues that Wiley's common pocketknife is a deadly weapon based on the way he used it. As to Wiley's argument that he lacked the necessary intent, this Court concurs.

Pursuant to § 784.03, the offense of battery occurs when a person actually and intentionally touches or strikes another person against the will of the other or intentionally causes bodily harm to another person. FLA. STAT. § 784.03(1)(a) (2001). Under § 784.045, a person commits aggravated battery who, in committing battery, intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement, or uses a deadly weapon. FLA. STAT. § 784.045(1)(a). Aggravated battery is a specific intent crime. Knott v. State, 573 So. 2d 179, 180 (Fla. 2d DCA 1991). A defendant must commit battery to commit aggravated battery, which requires a defendant to have the requisite intent for battery before she can commit aggravated battery. Compare § 784.03(1)(a), with § 784.045(1)(a). Said differently, a defendant cannot have the intent to commit aggravated battery if she does not have the requisite intent to commit battery. See id.

In this case, the Government fails to prove that Wiley intentionally touched or struck the Victim against her will or intentionally caused her bodily harm. On direct examination, the Victim testified that she "tried to pulled[sic] a knife and I ended up cutting myself." [D.E. 154 at 71]. At first glance, it appears that the Victim testified that Wiley "began to use the knife in a jabbing and slicing motion landing several lacerations on [her] right arm and hand area." Id. at 77. Upon

9

closer review, the Victim clarified that her injuries "[were] from [her] fighting with [Wiley]." Id. She then stated that "[she was] trying to grab the knife from [Wiley]," and "[she did not] think [Wiley] was going to cut [her]." Id. On cross-examination, the Victim testified that "[Wiley] went waiving the knife around, and that's how we ended up -- and I ended up trying to grab it out of his hand but he's overpowering me. So I -- I ended up getting cut." Id. at 85. She then stated that when "[she] tried to take [the knife] away from [Wiley], and he was -- he still had it in his hand. And by me trying to reach for the knife my arm -- I ended up cutting my arm. And I ended up getting cut because I'm trying to take the knife away from him to stop him from waiving the knife." Id. at 86.

Based on the Victim's testimony, Wiley did not actually and intentionally touch or strike her against her will or intentionally cause her bodily harm. Indeed, her testimony makes apparent that she received her knife injuries because she was trying to take the knife away from him. The Government did not prove that Wiley had the requisite intent to commit battery by a preponderance of the evidence, much less aggravated battery. As such, this Court concludes that, by a preponderance of the evidence, Wiley did not commit Aggravated Battery with a Deadly Weapon.

10

**Violation 13**

Wiley asserts that he did not commit False Imprisonment as alleged in Violation 13 because there is no evidence in the record that he confined or restrained the Victim against her will. He also argues that the Victim never testified that she attempted to leave his presence or that she felt unable to leave. The Government did not address this Violation in its Response. In brief, this Court is unpersuaded by Wiley's arguments.

Pursuant to § 787.02, "[t]he term 'false imprisonment' means forcibly, by threat, or secretly confining, abducting, imprisoning, or restraining another person without lawful authority and against her or his will." FLA. STAT. § 787.02(1)(a) (2015). "The essence of false imprisonment is the act of depriving the victim of personal liberty *or freedom of movement* for any length of time." Oakes v. State, 85 So. 3d 526, 527 (Fla. 1st DCA 2012). "The force used to restrain the victim need not be substantial; it must simply be sufficient to restrict the victim's movement." Id. "For this reason, false imprisonment 'may be completed by the simple momentary grasp of another person.'" Id.

Moreover, false imprisonment need not include the use of force. Lewis v. Atl. Disc. Co., 99 So. 2d 241, 242 (Fla. 1st DCA 1957). Any genuine restraint constitutes an actionable

11

imprisonment, although effected without actual contact with the person. Id. The essential thing is the restraint of the person. Id. This may be caused by threats, as well as by actual force; and the threats may be conduct or by words. Id. If the words or conduct are such as to induce a reasonable apprehension of force and the means of coercion are at hand, a person may be as effectually restrained and deprived of liberty, as by prison bars. Id. This freedom is liable for that interference no matter a defendant's motives or purposes. See State v. Graham, 468 So. 2d 270, 271 (Fla. 2d DCA 1985).

Here, the Government proved that Wiley used a pocketknife to confine the Victim to her living room. On direct examination, the Victim initially testified that Wiley was not using his knife "to keep me confining[sic]. [Wiley] was just trying to use it as a scare tactic." [D.E. 154 at 76]. A moment later, however, she testified that Wiley had the knife out and was trying to keep her from moving and leaving the living room. See id. On cross-examination, she again stated that she "did [not] feel like [she] were[sic] free to leave the house if [she] wanted to . . . because [Wiley] wouldn't let [her] leave." Id. at 90. The Victim only testified that she was free to leave at some point later between the times of the altercation with Wiley that night and the police arriving the next morning. Id. at 91.

12

The Victim's testimony clarifies that Wiley confined her to the living room. By pulling out his pocketknife and using it to scare her, Wiley deprived the Victim of her freedom of movement. The facts that Wiley used no actual force and whether the Victim could have left the home while he was sleeping are inconsequential. Because false imprisonment can occur for any length of time and without force, Wiley's threatening conduct of drawing his pocketknife was enough to illicitly restrain Victim to her living room and deprive her of her freedom of movement. As such, this Court concludes that, by a preponderance of the evidence, Wiley committed False Imprisonment. Thus, this Court affirms the Report and Recommendation as to Violation 13.

**Violation 14**

Lastly, Wiley argues that he did not commit Armed Trespass in a Structure or Conveyance as alleged in Violation 14 because he was welcome in the Victim's home. He also asserts that his pocketknife does not qualify as a weapon under Florida law. In its Response, the Government asserts that even if Wiley was welcome in the Victim's home, she subsequently asked him to leave. The Government also contends that Wiley's pocketknife qualifies as a dangerous weapon because of the way he used it. This Court concurs with the Government's position.

Under § 810.08(1),

> Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.

FLA. STAT. § 810.08(1) (2000). Pursuant to § 810.08(2)(c), "if the offender is armed with a firearm or other dangerous weapon, or arms himself or herself with such while in the structure or conveyance, the trespass in a structure or conveyance is a felony of the third degree . . ." FLA. STAT. § 810.08(2)(c) (2000). Consent to entry is an affirmative defense to trespass. Haugabrook v. State, 827 So. 2d 1065, 1069 (Fla. 2d DCA 2002); see also Gruver v. State, 816 So. 835, 837 (Fla. 5th DCA 2002) (concluding that there is no trespass when consent is present because lack of authorization is an element of trespass). A person who has consent to enter the premises, however, may be warned to depart. See Smith v. State, 778 So. 2d 329, 331 (Fla. 2d DCA 2000). If she then refuses to do so, she commits the crime of trespass. Id. Further, the Florida Legislature's "exclusion of common pocketknives from the definition of weapon does not mean that a pocketknife cannot be a dangerous or deadly weapon. See Argo v. Sec'y, Dep't of Corr., No. 8:05-cv-1964-T-33EAJ, 2010 WL 3222064, at *15 (S.D. Fla. Aug. 16, 2010) (citing State v. Nixon, 295 So. 2d 121, 122 (Fla. 3d DCA 1974)). A

14

common pocketknife is transformed into a weapon when a defendant uses or threatens to use it during a crime in such a way that it would be likely to cause death or serious bodily injury or could be used to cause death or inflict serious bodily injury. See id.; see also White v. State, 723 So. 2d 357 (Fla. 5th DCA 1998) (concluding that whether or not an object is a deadly weapon is a question of fact, taking into consideration its size, shape, and material and the manner in which it was used or was capable of being used).

The Government proved that Wiley remained in the Victim's house while possessing a pocketknife after she asked him to leave. The Government also proved that he used the pocketknife in a way that made it a dangerous weapon. On cross-examination, the Victim testified that Wiley "was welcome at [my] house as a guest" on the night in question. [D.E. 154 at 92]. On direct-examination, however, she told Wiley "[y]ou need to go home to be with your girlfriend. Just leave me alone. . . And I told him to leave . . .," once they began arguing. Id. at 84.

The Victim's testimony puts the sequence of events in their appropriate context and order. Wiley was initially welcome at her house, but she asked him to leave once they began arguing. Wiley was no longer permitted in her home at this point, yet he remained. Said another way, Victim warned Wiley to depart her house but he refused. Wiley also entered her house with a

15

pocketknife with a three-inch blade, which he pulled out, waived around at the Victim, and at a minimum used it as a scare tactic. This conduct transformed Wiley's pocketknife from merely a common pocketknife into a dangerous weapon. As such, this Court concludes that, by a preponderance of the evidence, Wiley committed Armed Trespassing in a Structure or Conveyance. Thus, this Court affirms the Report and Recommendation as to Violation 14. Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Report and Recommendation [D.E. 150] is **AFFIRMED, ADOPTED, AND RATIFIED** as to **VIOLATIONS 1 THROUGH 10, 13, 14, AND 15** and is **NOT AFFIRMED** as to **VIOLATIONS 11 AND 12**, as set forth herein. Lastly, it is

**ORDERED AND ADJUDGED** that all pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 1st day of December, 2016.

DONALD L. GRAHAM
UNITED STATES DISTRICT JUDGE

cc:   United States Chief Magistrate Judge Lynch

All Counsel of Record